## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**GLENN M. LEMONIA**            §        **CIVIL ACTION NO. 2:20-cv-01593**
    *Plaintiff*            §
         §
**v.**                    §
         §
**WESTLAKE MANAGEMENT**            §
**SERVICES, INC.**            §
    *Defendant*            §
         §        **JURY DEMAND HEREIN**

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

  **NOW COMES** Plaintiff, **GLENN M. LEMONIA,** through undersigned counsel, who files his Original Complaint against Defendant, **WESTLAKE MANAGEMENT SERVICES, INC**. He hereby states as follows:

---

## JURISDICTION AND VENUE

---

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 as it appears at 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act as it appears at 29 U.S.C. 621 *et seq*, 42 U.S.C. § 1981.

2. This Court has jurisdiction pursuant to the following statutes:

 a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States;

 b. 28 U.S.C. § 1343 (3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government;

1

3. Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) prior to instituting action (Charge No. 461-2019-01080).

4. The EEOC issued its "Notice of Right to Sue" on September 9, 2020. *See* Exhibit A. Plaintiff is afforded 90 days from his receipt of such Notice to commence suit, and the date of this filing is within the statutory period.

5. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in the Western District of Louisiana, specifically in Cameron Parish, making the Lake Charles Division the most appropriate Division for this suit.

## PARTIES

6. Plaintiff is a citizen of the United States and resides in the City of Fenton, State of Louisiana.

7. Plaintiff is African American and, as such, is a member of a protected class.

8. At all relevant times, Plaintiff was over forty (40) years old. As such, he is a member of a protected class.

9. Defendant, **WESTLAKE MANAGEMENT SERVICES, INC. ("WESTLAKE"),** is a corporation licensed to conduct and conducting business in the State of Louisiana. The acts complained of in this Complaint occurred in Calcasieu Parish, State of Louisiana, where Westlake performs a significant amount of business.

10. At all times relevant to this suit, Plaintiff worked as a journeyman electrician for Defendant at its location in Westlake, Louisiana.

## FACTUAL ALLEGATIONS

11. Plaintiff began his employment at the subject facility (hereinafter "Westlake South"), under the management of Defendant's predecessor, PPG, in September 1989. On or about August 31, 2016, Defendant acquired Westlake South, and Plaintiff worked for Defendant from the date of above-described acquisition until his discharge on or about November 20, 2020.

12. In March 2017, Plaintiff and all of the other non-shift, African-American journeyman electricians were suddenly and unexpectedly transferred by Superintendent, Leon Campbell (Caucasian) ("Campbell") to another area in the facility.

13. As a result of the transfer, which Plaintiff perceived to be the result of overt racial discrimination, Plaintiff filed a union grievance on April 27, 2017. Plaintiff subsequently filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 9, 2017 (Charge No. 461-2017-00990).

14. On August 28, 2018, Plaintiff submitted an online application for one of the three (3) Electrical Maintenance Supervisor positions that had opened within Westlake South.

15. In September 2018, Plaintiff submitted an internal complaint against a Caucasian manager, Bryan Thompson and Superintendent, Leon Campbell after the two engaged in what Plaintiff perceived to be threatening, harassive verbal conduct.

16. Plaintiff interviewed for the Electrical Maintenance Supervisor position on October 4, 2018.

17. Plaintiff was denied the advancement in favor of three (3) different individuals: 1) Christopher Bellon (Caucasian); 2) Joseph Holcombe (Caucasian); and 3) Joshua Vernier

(Caucasian). Upon good information and belief, all three (3) individuals were under the age of forty (40).

18. Christopher Bellon, a Caucasian employee under the age of 40, had finished an apprenticeship in 2017, at which time he was afforded the position of leadman and temporary supervisor for two (2) years. Despite the fact that Plaintiff had been working at Westlake South since 1989 and had vastly more experience, Bellon was awarded one of the Electrical Maintenance Supervisor positions.

19. Upon good information and belief, both Joseph Holcombe and Joshua Verner had been hired for the Maintenance Supervisor positions from outside the Westlake South facility.

20. On December 4, 2018, when Plaintiff returned to his work area and began to work, he unraveled a solder wire, at which time he noticed that a Westlake employee had tied a "noose" on the end of it. At that time, Plaintiff approached Ryan Melancon (Caucasian) and asked him to contact site security. In response: 1) Union President, Wade Istre; 2) Security, Brent Phelps; and 3) Security, Deidra Martin, came to observe the noose, take pictures, and take the noose to Human Resources.

21. Plaintiff met with Human Resources on or about December 6, 2018. During the meeting, Plaintiff requested an assessment report of the company's investigation for his records.

22. Following the December 7, 2018 meeting, Plaintiff received an email from Curtis Brescher, the Plant Manager, therein informing him that the company was investigating the incident and were "treating it with the highest level of concern and urgency."

23. Plaintiff received a subsequent email from Barbara Downer on December 11, 2018, wherein she provided a recap of the recent meeting.

24. After Security had viewed and obtained the noose, Plaintiff contacted the Calcasieu Parish Sheriff's Office and filed a police report on or about December 12, 2018. Therein, Plaintiff claimed a violation of La. R.S. 14:40.5, defined as "Public Display of a Noose on Property of Another or Public Place; Intent to Intimidate."

25. The very next day, Plaintiff was suddenly and unexpectedly transferred from Plant C to Plant B.

26. In response to the transfer, Plaintiff submitted a grievance on December 13, 2018, claiming that the Company initiated a transfer in violation of Article XXII of the Collective Bargaining Agreement existing between Defendant and the International Association of Machinists and Aerospace Workers, Local 470 (hereinafter "the Union").

27. On January 7, 2019, Plaintiff submitted a response to Barbara Downer's December 11, 2018 "Summary" email. Plaintiff noted that, as of that date, he had not received an assessment report of the company's investigation into the noose incident. Plaintiff also recapped his history of reporting what he perceived to be workplace discrimination, including his complaints after the transfer that occurred in 2017. Finally, Plaintiff noted his intent to report using the proper chain of command or, if he did not feel safe to do so, to use whatever channels he thought necessary to make sure his concerns were heard.

28. In February 2019, Plaintiff received his performance evaluation from Campbell and Thompson. The evaluation reflected that Plaintiff received an overall "unsatisfactory" review, which ran in stark contrast to the performance evaluations Plaintiff had received for numerous years prior.

29. On February 26, 2019, Plaintiff was placed on a Performance Improvement Plan ("PIP") for six (6) months.

30. On March 12, 2019, Plaintiff submitted a grievance, claiming therein that Thompson and Campbell had engaged in unlawful activity, including "discriminatory practices, harassment and retaliation" against Plaintiff while he had engaged in protected activity.

31. When Plaintiff received his first month's review of the PIP on April 3, 2019, Plaintiff asked Union President, Wade Istre, to be present. During the meeting, Mr. Istre asked Campbell whether he had given Plaintiff any form of counseling or progressive counseling prior to issuing the PIP, to which Campbell responded, "no." When Mr. Istre asked Campbell why he would place an employee on a PIP without any prior counseling, Campbell responded, "because I can do it."

32. On or about June 21, 2019, Plaintiff filed a new Charge of Discrimination with the EEOC (Charge No. 461-2019-01080). Therein, Plaintiff alleged discrimination on the bases of age and race, as well as retaliation for his former complaints of the same.

33. Campbell passed away on or about July 4, 2019. At that time, Campbell's Superintendent position was assumed by Keith Willis (Caucasian).

34. During Plaintiff's next PIP review, Willis instructed Plaintiff not to speak to anyone about anything but work unless he was on break. When Plaintiff asked if the rule was being applied to all employees or just to him, Willis indicated that he was only invoking the rule against Plaintiff. In response, Plaintiff requested that Willis set up a meeting with Human Resources.

35. Following Plaintiff's lunch hour on the day of the PIP review, Plaintiff went in to the Plant B Shop and informed Joe Holcombe that he was going to seek medical attention. When he returned, he asked Joe Holcombe to take his afternoon break so that he could go speak to his Union Representative.

36. On July 25, 2019, Plaintiff presented to Dr. William P. Donovan, Nurse Practitioner for the stress and nervousness surrounding interactions with his new supervisor, Keith Willis, and the demands of the performance improvement plan. The medical records from the July 25, 2019 visit reflect that Plaintiff presented with Situational anxiety.

37. On September 17, 2019, Plaintiff's Union filed a Charge against Defendant with the National Labor Relations Board, therein alleging that, since May 2019, Defendant had failed to bargain collectively and in good faith with the Union by refusing to timely provide and/or unreasonably delaying providing relevant information requested by the Union in May 2019.

38. On November 18, 2019, Plaintiff's treating Veteran's Affairs psychiatrist, Charlotte Hutton, MD, requested that Plaintiff take medical leave from November 18, 2019 through January 2, 2020 due to the significant stress and anxiety, with secondary medical symptoms, created by Plaintiff's employment environment.

39. On January 22, 2020, Dr. Hutton recommended continued medical leave from January 22, 2020 to May 11, 2020.

40. On April 24, 2020, Dr. Hutton indicated that Plaintiff was being treated for Posttraumatic Stress Disorder (PTSD) with nightmares after struggling with 30 years of threats of being fired, race-based comments, and objects left at his workstation. Therein, and due to her concern that Plaintiff's condition would be exacerbated upon his return to work, Dr. Hutton recommended that Plaintiff's medical leave of absence be continued from April 24, 2020 through July 27, 2020.

41. On July 27, 2020, and due to her concern that Plaintiff's condition would be exacerbated upon his return to work, Dr. Hutton requested that Plaintiff's medical leave of absence be continued from July 27, 2020 through October 27, 2020.

42. On October 21, 2020, and due to her concern that Plaintiff's condition would be exacerbated upon his return to work, Dr. Hutton requested that Plaintiff's medical leave of absence be continued from October 21, 2020 through January 25, 2021.

43. Plaintiff formally resigned on November 30, 2020.

---

## FIRST CAUSE OF ACTION:
## RACIAL DISCRIMINATION (HOSTILE WORK ENVIRONMENT) IN EMPLOYMENT
### *Pursuant to 42 U.S.C. 2000e et seq.*

---

44. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

45. Under Title VII, it is an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a)(1).

46. Defendant is an "employer" subject to the provisions of Title VII. At all relevant times, Westlake was an entity engaged in an industry affecting commerce who had fifteen or more employees defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees. . . ." 42 U.S.C. § 2000e(b).

47. Plaintiff is African-American and is therefore a member of a protected class.

48. Upon good information and belief, based on disparate treatment, Plaintiff alleges that he was subjected to unlawful discrimination on the basis of his race. As set forth in the

preceding paragraphs, Plaintiff was subjected to uninvited harassment on the basis of his race. The alleged harassment dealt specifically with Plaintiff's status as an African-American, including, but not limited to: 1) being presented with a solder wire tired in the shape of a hangman's noose; and 2) being actively denied promotional advancement in favor of Caucasian employees.

49. Defendant, through its agents and employees, subjected Plaintiff to severe ridicule, insult, and mental distress by its use of noose-shaped objects and other racially derogatory material in the workplace.

50. Defendant's conduct was subjectively offensive to Plaintiff, as made clear by the extended medical leave of absence he was forced to take as a result of the anxiety, PTSD, and other mental health conditions stemming from his workplace interactions. Accordingly, the harassment affected a term, condition, or privilege of Plaintiff's employment to the extent that he would not present to the workplace due to the anxiety caused thereby.

51. Westlake, through its agents and employees, were made aware of the harassive conduct; however, and while Westlake asserted that it would meaningfully investigate the matters, it did not do so. Accordingly, Defendant failed to take prompt remedial action.

52. Plaintiff's race, African-American, was a determining factor in treating Plaintiff less favorably than Caucasian employees.

53. Plaintiff opposed what he perceived to be discriminatory treatment on the basis of his race. Westlake did absolutely nothing to rectify the situation.

54. Wherefore Plaintiff asks this Honorable Court to find **WESTLAKE MANAGEMENT SERVICES, INC.** liable for the violation of Title VII of the Civil Rights Act of 1964.

## SECOND CAUSE OF ACTION:
## RACIAL DISCRIMINATION IN EMPLOYMENT
*Pursuant to 42 U.S.C. 2000e et seq.*

55. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

56. Plaintiff was qualified for the position of Electrician Maintenance Supervisor.

57. Plaintiff applied for the vacant Electrician Maintenance Supervisor positions in August 2018, and he interviewed for the same in October 2018. Plaintiff was not selected for any of the open positions.

58. At the time Plaintiff was denied promotion, Plaintiff, as an African-American, was a member of a protected class.

59. Upon good information and belief, three (3) Caucasian individuals were awarded the promotions in lieu of Plaintiff.

60. Plaintiff opposed what he perceived to be discriminatory treatment on the basis of his race. Westlake did absolutely nothing to remedy the situation.

61. Wherefore Plaintiff asks this Honorable Court to find **WESTLAKE MANAGEMENT SERVICES, INC.** liable for the violation of Title VII of the Civil Rights Act of 1964.

## THIRD CAUSE OF ACTION:
## AGE DISCRIMINATION IN EMPLOYMENT
*Pursuant to 42 U.S.C. 2000e et seq.*

62. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

63. Plaintiff was qualified for the position of Electrician Maintenance Supervisor.

64. Plaintiff applied for the vacant Electrician Maintenance Supervisor positions in August 2018, and he interviewed for the same in October 2018. Plaintiff was not selected for any of the open positions.

65. At the time Plaintiff was denied a promotion, Plaintiff, who was over the age of forty (40), was a member of a protected class.

66. Upon good information and belief, three individuals outside of the protected age class were awarded the promotions in lieu of Plaintiff.

67. Plaintiff opposed what he perceived to be discriminatory treatment on the basis of his age. Westlake did absolutely nothing to remedy the situation.

68. Wherefore Plaintiff asks this Honorable Court to find **WESTLAKE MANAGEMENT SERVICES, INC.** liable for the violation of the Age Discrimination in Employment Act 29 U.S.C. § 621 *et al.*

---

## FOURTH CAUSE OF ACTION:
### RETALIATION
*Pursuant to 42 U.S.C. § 2000e-3(a) and 29 U.S.C. § 626(c)*

---

69. Plaintiff incorporates and reinstates each of the above paragraphs as if fully set forth herein.

70. Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a). The ADEA similarly prohibits retaliatory conduct. 29 U.S.C. § 626(c)(1).

71. On May 9, 2017, Plaintiff filed a Charge of Discrimination with the EEOC, which constitutes protected participation activity as defined by Title VII.

72. Following the submission of Plaintiff's EEOC Charge, he applied to and was not selected for promotion to any one (1) of three (3) open Electrical Maintenance Supervisor positions. Accordingly, Plaintiff was subjected to adverse employment action upon Westlake's failure to promote him.

73. Two of the individuals who greatly influenced the decision not to promote Plaintiff – Campbell and Thompson – were made readily aware of Plaintiff's EEOC Charge.

74. On December 4, 2018, and throughout the several weeks after, Plaintiff engaged in significant communications with Defendant regarding the solder wire he found tied in the shape of a noose. Plaintiff consistently raised concerns of the racial animus underlying the solder wire, and he went so far as to file a police report with the Calcasieu Parish Sheriff's Office alleging that the same constituted a hate crime.

75. Very shortly after Plaintiff's complaints regarding the solder wire, he was transferred to another Plant, and he received his "unsatisfactory" performance review in his 29-year career with the company. Then, and despite the fact that he had not received any prior counseling for the same, Plaintiff was placed on a six-month Performance Improvement Plan.

76. Campbell, the individual who issued Plaintiff the "unsatisfactory" review and the PIP, was made readily aware of Plaintiff's December 4, 2018 complaint.

77. Plaintiff then filed a subsequent Charge of Discrimination with the EEOC, alleging race discrimination, age discrimination, and retaliation. Accordingly, Plaintiff engaged in

protected participation activity under both Title VII and the ADEA through the submission of his June 2019 EEOC Charge.

78. Shortly after Plaintiff filed his June 2019 EEOC Charge, one of the key perpetrators, Campbell, passed away. At that time, Keith Willis became the acting Superintendent of the Westlake South facility.

79. When Willis assumed the role of meeting with Plaintiff for his PIP, he instructed that Plaintiff, and only Plaintiff, was thereafter required to refrain from discussing anything non-work related with any employee of Defendant unless he was on break or otherwise off of the clock. This instruction, coupled with the PIP, the performance review, and Westlake's overt failure to take any remedial action following the December 4, 2018 "noose" incident, caused Plaintiff to suffer situational anxiety, PTSD, and other comorbid mental health conditions that forced him to take an extended medical leave of absence. Plaintiff's treating physician indicated that returning to the work environment at Westlake South would exacerbate Plaintiff's medical condition.

80. The retaliation culminated on November 30, 2020, at which time Plaintiff was constructively discharged. The anxiety, PTSD, stress, and other mental health conditions, which had developed from the abusive working environment to which Plaintiff had been subjected for numerous years with Westlake, left him with no choice but to resign from his employment and retire from the workforce altogether.

81. As set forth above, Defendant, through its agents, supervisors and/or employees, in a continuing course of conduct, subjected Plaintiff to retaliation and discrimination in the terms, conditions, and privileges of his employment in retaliation for him opposing what he believed to be unlawful conduct on various occasions.

82. Defendant failed to act in accordance with 42 U.S.C. § 2000e-3(a).

83. Defendant's retaliation is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

84. As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-pecuniary losses including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses to be more fully developed at the trial on this matter.

85. Wherefore Plaintiff asks this Honorable Court to find Defendant, **WESTLAKE MANAGEMENT SERVICES, INC.,** liable for the violation of 42 U.S.C. § 2000e-3(a).

---

## FIFTH CAUSE OF ACTION:
*Violation of 42 U.S.C. § 1981*

---

86. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

87. 42 U.S.C. § 1981 protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race. 42 U.S.C.S. § 1981(a). The statute currently defines "make and enforce contracts" to include the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.S. § 1981(b). 42 U.S.C.S. § 1981 ensures that all persons have the same right to make and enforce contracts, including the making, performance, modification, and termination of employment contracts. 42 U.S.C.S. § 1981.

88. Plaintiff incorporates the contents of Paragraphs 1-61 and 69-85 by reference, as Title VII and § 1981 claims are analyzed under the same evidentiary standards.

89. Wherefore, Plaintiff asks this Honorable Court to find that, under 42 U.S.C. 1981, Defendant, **WESTLAKE MANAGEMENT SERVICES, INC.,** liable for depriving Plaintiff of rights, privileges, or immunities secured by the Constitution and law.

## PRAYER

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment against Defendant providing the following relief:

(a) All damages to which Plaintiff may be entitled, including but not limited to back pay, reimbursement for lost position and training, social security and other benefits, front pay, and any and all statutory relief;

(b) Punitive or exemplary damages;

(c) Reasonable attorney's fees, with conditional awards in the event of appeal;

(d) Pre-judgment interest at the highest rate permitted by law;

(e) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(f) Costs, including expert fees;

(g) Reasonable and necessary medical care and expenses in the past and future;

(h) Mental anguish damages in the past and future;

(i) Injunctive relief; and

(j) Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

**Respectfully Submitted**,

**SUDDUTH & ASSOCIATES, LLC**
Attorneys-at-Law
1109 Pithon St.
Lake Charles, Louisiana 70601
Tel: (337) 480 - 0101
Fax: (337) 419 - 0507
Email: *james@saa.legal*

**BY:** *<u>/s/ James E. Sudduth, III</u>*
     **JAMES E. SUDDUTH, III, #35340**
     **KOURTNEY L. KECH, #37745**
     **PIERCE A. RAPIN, #38579**
     *Counsel for Plaintiff*